HOWARD Z. ROSEN, State Bar No. 54442
hzrosen@posner-rosen.com
JASON C. MARSILI, State Bar No. 233980
jmarsili@posner-rosen.com
BRIANNA M. PRIMOZIC, State Bar No. 274397
bprimozic@posner-rosen.com

POSNER & ROSEN LLP
3600 Wilshire Blvd., Suite 1800
Los Angeles, CA 90010-2679
Telephone No. (213) 389-6050
Facsimile No. (213) 389-0663

Attorneys for DEFENDANTS
*William C. Waggoner, Mickey J. Adams,
Ron Sikorski, Dan Billy, Dan Hawn,
Larry Davison, Patricia M. Waggoner,
Kenneth D. Waggoner, Bert Tolbert,
and Operating Engineers Funds, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO SALAS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL UNION OF OPERATING ENGINEERS, *et al.*,<br><br>Defendants. | CASE NO.  CV 12-10506 DDP (VBKx)<br>*CLASS ACTION*<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS WILLIAM C. WAGGONER, PATRICIA M. WAGGONER, BERT TOLBERT, MICKEY J. ADAMS, RON SIKORSKI, DAN BILLY, DAN HAWN, LARRY DAVISON, KENNETH D. WAGGONER, AND OPERATING ENGINEERS FUNDS, INC. TO DISMISS THE FOURTH AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      June 2, 2014<br>Time:      10:00 a.m.<br>Place:     Courtroom 3, 2nd Floor<br>Judge:    Hon. Dean D. Pregerson |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 2, 2014, at 10:00 a.m. or as soon thereafter as counsel may be heard before the Honorable Dean D. Pregerson, Judge Presiding, in Courtroom 3 of the above-entitled court located at 312 North Spring Street, Second Floor,  Los Angeles, California 90012, Defendants William C. Waggoner, Patricia M. Waggoner, Bert Tolbert, Mickey J. Adams, Ron Sikorski, Dan Billy, Dan Hawn, Larry Davison, Kenneth D. Waggoner, and Operating Engineers Funds, Inc. (collectively referred to herein as "Moving Defendants") will, and do hereby, move for an Order dismissing the Fourth Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made on the grounds that the Fourth Amended Complaint fails to state claims for relief against the Moving Defendants for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), violation of the Employment Retirement Income Security Act ("ERISA"), breach of fiduciary duty under common law, conversion, or violation of the California Unfair Competition Law (Bus. & Profs. Code § 17200, *et seq*.).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support, Defendants' Notice of Joinder in Motions to Dismiss the Fourth Amended Complaint filed

///
///
///

**NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT**

1   concurrently herewith, the complete files and records in this action, and any

2   further argument or evidence as may be presented at or before the hearing on the

3   motion.

4          The motion is made following the conference of counsel pursuant to Local

5   Rule 7-3, which took place on March 5, 2014.

6

7

8   **DATED:**  March 25, 2014                    **POSNER & ROSEN LLP**

9

10                                    By:_____ *Howard Z. Rosen*_____

11                                          HOWARD Z. ROSEN
                                            JASON C. MARSILI
12                                          BRIANNA M. PRIMOZIC
                                            Attorneys for Defendants
13                                          William C. Waggoner, Mickey J.
                                            Adams, Ron Sikorski, Dan Billy, Dan
14                                          Hawn, Larry Davison, Patricia M.
                                            Waggoner, Kenneth D. Waggoner,
15                                          Bert Tolbert, and Operating Engineers
                                            Funds, Inc.
16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED COMPLAINT**

1

## TABLE OF CONTENTS

2  TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

3  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

4  LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

5  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

6  I.     PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED . . . . . . . . . . .  2

7         A.   Plaintiffs' Allegations Concerning a "BA Fund Scheme" Do Not
              Plausibly State a Right to Relief Under RICO   . . . . . . . . . . . . . . . .  3

8
              1.   Plaintiffs Still Cannot Establish RICO Standing . . . . . . . . . . .  5
9
              2.   Plaintiffs' Continued Reliance on Collective Pleading Requires
10                 Dismissal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

11        B.   Plaintiffs Fail to Adequately Allege Any Underlying Predicate Acts
              Sufficient to Support their RICO Claim . . . . . . . . . . . . . . . . . . . . .  8
12
              1.   Hobbs Act Extortion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
13
              2.   Unlawful Monetary Transactions . . . . . . . . . . . . . . . . . . . . . .  11
14
              3.   Embezzlement from Local 12 or OETT . . . . . . . . . . . . . . . . .  12
15
         C.   Plaintiffs' Conclusory Allegations Fail to Establish the Requisite
16            "Pattern" and "Enterprise" Elements of RICO . . . . . . . . . . . . . . . .  13

17  II.    THE FIFTH CLAIM FAILS TO STATE A VIOLATION OF ERISA . . .  15

18        A.   Trustees Must Exercise Discretion in Performing their Duties of
              Providing Benefits   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
19
         B.   As Payment of a "Thirteenth Check" Was for the Benefit of
20            Participants, Any Incidental Benefit to the Trustees is Not a Violation
              of ERISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
21
22  III.   THE EIGHTH AND NINTH CLAIMS FAIL TO STATE AN ERISA
         CLAIM BASED ON DIVERSION OF OETT ASSETS VIA EPEC . . . . .  17

23  IV.    THE TENTH AND ELEVENTH CLAIMS FOR COMMON LAW
         BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED  . . . . . . .  18
24
         A.   The Alleged Mandatory Contributions to EPEC and the BA's Fund
25            Do Not Implicate a Breach of Fiduciary Duty . . . . . . . . . . . . . . . .  18

26        B.   Federal Law Preempts The Tenth Claim  . . . . . . . . . . . . . . . . . . . . .  19

27

28

C.   A CBA Provision for a Five-Cent Political Contribution from Employers Does Not Show a Breach of Fiduciary Duty . . . . . . . . . 20

V.   PLAINTIFFS' CONVERSION CLAIM SHOULD BE DISMISSED . . . . 21

VI.   PLAINTIFFS' UCL CLAIMS SHOULD BE DISMISSED . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adams-Lundy v. Ass'n of Prof'l Flight Attendants*,
   844 F.2d 245 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Aetna Health Inc. v. Davila*,
   542 U.S. 200 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Aguilar v. Mega Lighting, Inc.*,
   2009 WL 940941, at *4 (C.D. Cal. Apr. 6, 2009) . . . . . . . . . . . . . . . . . . . 6

*Air Line Pilots Ass'n Intern. v. O'neill*,
   499 U.S. 65 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Bank of NY v. Fremont General Corp*,
   523 F.3d 902 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Blake v. Dierdorff*,
   856 F.2d 1365 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
   727 F.3d 917 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 24

*Canyon Country v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Casault v. Fed. Nat. Mortgage Ass'n*,
   915 F. Supp.2d 1113 (C.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*DelCostello v. Teamsters*,
   462 U.S. 151 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Diaz v. Gates*,
   420 F.3d 897 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Evans v. U.S.*,
   504 U.S. 255 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Friends of Phil Gramm v. Americans for Phil Gramm in '84*,
   587 F.Supp 769 (E.D. Va 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fristoe v. Reynolds Metals Co.*,
    615 F.2d 1209 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Heinrich v. Waiting Angels Adoption Services, Inc.*,
    668 F.3d 393 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hemi Group, LLC v. City of New York*,
    559 U.S. 1, 130 S. Ct. 983 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*HJ Inc. v. Northwestern Bell tel. Co.*,
    492 U.S. 229 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hill v. Opus Corp.*,
    841 F. Supp. 2d 1070 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Holmes v. Sec. Investor Prot. Corp*,
    503 U.S. 258 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Izenberg v. ETS Servs, LLC*,
    589 F. Supp. 2d 1193 (C.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Lancaster Commumity Hosp. v. Antelope Valley Hosp. Dist.*,
    940 F.2d 397 (9th Cuir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*Mahoney v. Board of Trustees, Boston Shipping etc.*,
    973 F.2d 968 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Mendoza v. Zirkle Fruit Co.*,
    301 F.3d 1163 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Morse v. Stanley*,
    732 F.2d 1139 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Nat'l Org. for Women, Inc. v. Scheildler*,
    510 U.S. 249 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 24

*Pelletier v. Zweifel*,
    921 F.2d 1645 (11th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Savage v. Council on American-Islamic Relations, Inc*,
    2008 WL 2951281, at *14 (N.D. Cal. July 25, 2008) . . . . . . . . . . . . . . . . . 9

*Sekhar v. U.S.*,
    133 S. Ct. 2720 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Scheidler v. Nat'l Org. for Women, Inc.*,
    537 U.S. 393 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Sparling v. Hoffman Const. Co.*,
    864 F.2d 635 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stelling v. Int'l Bhd of Elec Workers Local Union No. 1547*,
    587 F.2d 1389 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Stockman v. Federal Election Com'n*,
    138 F.3d 144 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Toensing v. Brown*,
    528 F.2d 69 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Trustees of So. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mechanical, Inc.*,
    438 F. Supp. 2d 1156 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 23

*U.S. v. Enmons*,
    410 U.S. 396 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. v. McFall*,
    558 F.3d 951 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*U.S. v. Rogers*,
    321 F.3d 1226 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*U.S. v. Thordarson*,
    646 F.3d 1323 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*U.S. v. Vandenbergen*,
    969 F.2d 338 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Walters v. McMahen*
    684 F.3d 435 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Williams v. Pacific Maritime Ass'n*,
    421 F.2d 1287 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

STATE CASES

2

3
*Emery v. Visa Int'l Service Ass'n*,
   95 Cal. app. 4th 952 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

4
*Farrington v. A. Teichert & Son*,
   59 Cal. App. 2d 468 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
5

*Haigler v. Donnelly*,
6
   18 Cal. 2d 674 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

7
*In re Tobacco II Cases*,
   46 Cal 4th 298 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
8

*People v. Toomey*,
9
   157 Cal. App. 3d 1 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

10
*Schultz v. Neovi Data Corp.*,
   152 Cal. App. 4th 86 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24
11

*Service Employees Int'l Union, Local 250 v. Colcord*,
12
   160 Cal. App. 4th 362 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

13
*Vu v. Cal. Commerce Club, Inc.*,
   58 Cal. App. 4th 229 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
14

15

FEDERAL STATUTES

16

17
2 U.S.C. §437c(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

18
2 U.S.C. §437d(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

19
2 U.S.C. §437g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20
2 U.S.C. §441b(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

21
18 U.S.C. §664 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

22
18 U.S.C. §1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

23
18 U.S.C. §1951(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22

24
18 U.S.C. §1956 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

25
18 U.S.C. §1957 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

26
18 U.S.C. §1961(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

27

28

18 U.S.C. §1961(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

18 U.S.C. §1962 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18 U.S.C. §1964(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. §185 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C. §185(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

29 U.S.C. §501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

29 U.S.C. §501(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

29 U.S.C. §501 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

29 U.S.C. §1104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## INTRODUCTION

After more than one year and four previous attempts to adequately plead their claims, Plaintiffs' Fourth Amended Complaint ("4AC") persists in failing to state claims for which relief may be granted.  Notwithstanding the Parties' previous completion of briefing on motions to dismiss many of the same claims for relief addressed herein, Plaintiffs' 4AC includes claims alleging violations of RICO, ERISA, common law breach of fiduciary duty, conversion, and violations of the California Unfair Competition Law, that remain factually deficient and legally incognizable.  As any further attempts to cure the deficiencies would be futile, Defendants move to dismiss these claims for relief with prejudice.

## LEGAL STANDARD

A complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory legal statements are not accepted as true, and "naked assertions devoid of further factual enhancement" do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and alteration omitted).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint must be dismissed. *Id.* at 679.

## ARGUMENT

Federal Rules of Civil Procedure 8(a)(1) and 8(d) require that Plaintiffs set forth a "short and plain statement" of their claim for relief against each defendant. The pleading must be "simple, concise and direct."  Plaintiffs must plead more than just labels and conclusions, but instead must set forth factual allegations that raise a plausible right to relief against each defendant. *Twombly*, 550 U.S. at 555-56; *Iqbal*, 556 U.S. at 679.  The allegations must provide each defendant with "fair notice of a legally cognizable claim and the grounds on which it rests." *Twombly*, 550 U.S. at 555.

Conversely, in the fifth iteration of Plaintiffs' Complaint, the 4AC comprises

"quintessential 'shotgun' pleadings," and "rambling recitations" of inflammatory allegations that are immaterial to any of the causes of action asserted. *See Pelletier v. Zweifel*, 921 F.2d 1465, 1517-18 (11th Cir. 1991) (abrogated on other grounds). Without allegations of the conduct engaged in by each Moving Defendant, the pleading of their claims is not sufficient under *Twombly*. This is especially true in relation to claims that involve allegations of fraud, such as the claims under RICO, which require a heightened standard of pleading and specific factual allegations as to each Moving Defendant. Fed. R. Civ. P. 9(b); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1999).

## I.   PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED

Plaintiffs assert two claims for relief under RICO, alleging violation of §1962(c) [prohibiting conduct of an enterprise through racketeering]. Both claims should be dismissed in their entirety. The first, comprising Plaintiffs' 13th Claim for Relief, is asserted against five (5) of the Moving Defendants: William Waggoner ("WWaggoner"), Sikorski, Adams, Hawn, and Davison (referred to collectively as the "Local 12 RICO Defendants" [¶627]).[1] In what is now their fifth attempt to state a cognizable RICO claim against any Moving Defendant under section 1964(c), Plaintiffs base their 13th Claim on what they refer to as "the extortionate BA's Fund practice."[2] (4AC 192:27).

---

[1] All paragraph citations herein refer to the 4AC unless otherwise noted.

[2] Plaintiffs' 14th Claim for Relief–also a RICO claim under §1962(c))–is based on separate alleged practices concerning contributions to an IUOE political action fund referred to as "EPEC" or the "President's Club," relating primarily to activities of the International. (¶649-671). That Claim is asserted against several IUOE Defendants and one Local 12 Moving-Defendant, WWaggoner. Thus, in addition to the arguments made herein that equally compel dismissal of Plaintiffs' 14th Claim as to WWaggoner, and in the interest of judicial economy, Moving Defendants join in the discussion and arguments of the IUOE Defendants in support of their Motion to Dismiss, including those specific to Plaintiffs' EPEC-related allegations and RICO claim.

**A.    Plaintiffs' Allegations Concerning a "BA Fund Scheme" Do Not
Plausibly State a Right to Relief Under RICO**

Plaintiffs' theory rests upon allegations that certain categories of employees of Local 12 and OETT received a monthly expense check of $550 in addition to their base salary, and further contend that such expense checks were merely used to "embezzle" and "extort" money because every employee receiving a monthly expense check was also required under "threat of termination" to contribute $50 per month to a "BA's Fund."  (*See* ¶¶65-66, 70, 77-78).  As a result, Plaintiffs assert, each instance of an employee contributing to the BA's Fund amounts to extortion in violation of the Hobbs Act, and thus a predicate act under RICO.  (¶78, 636-637).  Any banking transactions involving such funds, Plaintiffs argue, constitute unlawful monetary transactions.  (¶638, 641).

Plaintiffs then take their allegations of extortion from union and trust fund employees a step further, making the jump to asserting that the "extortion crimes" were actually just a step in a deeper scheme to "embezzle" money from OETT and/or Local 12, to effect "an untaxed transfer of assets from the OETT to Defendant Waggoner" for use in reelection campaigns or otherwise.  (¶69, 642-643).  "Thus, Defendant Waggoner was embezzling OETT funds by using employees controlled by threat of termination to direct those funds to him."  (¶68). Plaintiffs rely on this theory without identifying *any* factual or logical support justifying the string of assumptions required to reach their conclusions.  Taken as true, Plaintiffs' scant factual allegations concerning the "BA Fund scheme" are facially insufficient to make their theories of criminal activity plausible, and are further weakened by accompanying allegations that, when also taken as true, even contradict Plaintiffs' theories.

For example, Plaintiffs allege that named Plaintiffs Salas, Chamberlain, and Watson were "forced to contribute to the BA's Fund under threat of termination" because they received monthly expense reimbursement checks as employees of

Local 12 or OETT.  (¶70-71, 635).  However, Plaintiffs include substantive factual allegations concerning such contributions only as to Watson; Salas and Chamberlain are merely named in a cursory fashion with the conclusory allegation that they were also "forced to contribute to the BA's Fund."  (¶8-9, 70).  Plaintiff Paxin apparently was never compelled to contribute to the BA's Fund, despite having been both an employee of Local 12 *and* an OETT instructor.  (*See* ¶8-11).

To support their claim, Plaintiffs summarily allege that "Defendants" used "threats of economic harm and violence, to effectuate the scheme" of BA's Fund contributions.  (¶634).  Yet, the only factual allegations concerning a "threat" inducing any Plaintiff's contributions are vague statements about one conversation in approximately 1999 between Watson and then-OETT administrator Bert Tolbert, during which Watson was "reprimanded" for his previous failure to contribute and informed that employees receiving expense checks–such as OETT employees at the Coordinator level–were "expected" to contribute $50 per month to the BA's Fund. (¶65-66).  Plaintiffs allege no other facts supporting their blanket contention that every contribution Watson or others purportedly made for years thereafter was induced by reasonable fear of harm stemming from this single interaction, with a single individual who is not even named as a RICO Defendant.

Instead, Plaintiffs' only substantive allegations show that Plaintiff Watson was employed as a Curriculum Coordinator since 1997 and received expense checks every month for approximately two (2) years before he ever even heard of a BA's Fund or was first allegedly told that he was "expected to contribute" (¶65-66); that the administrator "excused" his failure to contribute in the past (¶67); that Watson was never threatened with physical violence or termination, but claims to have become "concerned" that his employment could be "terminated or at least adversely affected" (¶67); and that Watson never even inquired as to the purpose of the contributions until asking an unnamed business agent at some unspecified "later" time (¶68).  OETT administrator Tolbert "and others" purportedly told

unnamed employees at unknown times that contributions to the BA's Fund had to be made in cash only–a statement that Plaintiffs contend is highly indicative of criminal activity. (¶69). Yet accompanying statements that employees were *given a receipt* for contributions, and that the funds were regularly deposited in a bank account with multiple signatories, facially discredit Plaintiffs' theories. (¶71, 75).

Plaintiffs assert, again without factual support, that all payments contributed in this "scheme" were purely for WWaggoner's personal benefit, to use as he pleased as "tax-free" additional income. (¶66, 69, 71). Yet, Plaintiffs also allege facts showing that WWaggoner was not even a co-signatory on the unspecified bank account that Plaintiffs claim was used to deposit these specific funds for WWaggoner's personal use. (¶71, 75). Nor do Plaintiffs give any attention to the facial implausibility of a criminal scheme requiring the cooperation of scores of different individuals in order for one person to "steal" $50 a month while leaving the "victim" with $500.

No explanation is offered for these contradictory allegations. Nor do Plaintiffs state any facts tending to discredit any number of equally or more plausible, common sense explanations for the isolated activities that Plaintiffs contend must be criminal in nature. Plaintiffs' allegations are entitled to the presumption of truth only if they "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F. 3d 1202, 1216 (9th Cir. 2011). "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. *Id.*

### 1.    *Plaintiffs still cannot establish RICO standing*

RICO provides a private cause of action to "[a]ny person injured in his business or property by reason of a violation of" the RICO statute. 18 U.S.C. §1964(c). To establish standing to sue under §1964(c), a private plaintiff must

adequately allege that he or she has personally suffered an injury constituting

"harm to a specific business or property interest" that is a "concrete financial loss."

*Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972, 975 (9th Cir. 2008)

(internal quotation marks omitted); *Diaz v. Gates*, 420 F.3d 897, 898-900 (9th Cir.

2005).  As this Court has held, a RICO plaintiff must "show concrete financial loss

by documenting the amount of damages."  *Aguilar v. Mega Lighting, Inc.*, 2009

WL 940941, at *4 (C.D. Cal. Apr. 6, 2009).  RICO standing is further contingent

upon allegations showing that the named Plaintiff's asserted injury was

*proximately caused* by the alleged RICO violation, meaning that there must be a

"direct relationship" between the injury and the racketeering activities alleged.

*Hemi Group, LLC v. City of New York*, 559 U.S. 1,  (2010).

Plaintiffs now contend that "forced" BA's Fund contributions are the injury

to three (3) named Plaintiffs' business or property sufficient to confer standing

under RICO.  (¶637).  Moving Defendants do not dispute that loss of an

individual's money may be a permissible property injury for RICO standing.

However, Plaintiffs fail to set forth facts showing that the RICO Defendants'

purported engagement in racketeering activities proximately caused any cognizable

injury to the named Plaintiffs for which they may now recover under RICO.

First, even if Plaintiffs could state facts supporting all of the underlying

predicate acts alleged–which, as discussed in detail *infra*, they cannot–any injuries

resulting from purported unlawful banking transactions or embezzlement of assets

belonging to the union and/or trusts by definition could not confer the requisite

standing on the named Plaintiffs.  *See, e.g.*, *Adams-Lundy v. Ass'n of Prof'l Flight*

*Attendants*, 844 F.2d 245, 250 (5th Cir. 1988) (union members lacked RICO

standing where "[a]ny financial improprieties occurred with union funds and

directly injured solely the union"); *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163,

1168-69 (9th Cir. 2002) (derivative or "passed-on" injuries do not establish RICO

standing); *Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 640-41 (9th Cir. 1988)

1  (corporation's sole shareholders and guarantors lacked RICO standing because

2  their injuries derived from the direct injury to the corporation).

3       Second, to the extent Plaintiffs base their claim on extortion or conversion of

4  their own money in violation of the Hobbs Act, the substantive allegations address

5  only one of the named Plaintiffs, and do not include *facts* establishing the requisite

6  relationship between Watson's purported loss and alleged criminal actions of any

7  of the Local 12 RICO Defendants.  Because the only compensable injury arising

8  from violation of § 1962(c) is the concrete financial harm to a plaintiff's business

9  or property caused by the defendant's commission of at least two (2) sufficiently-

10  related predicate acts (*see Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453, 457

11  (2006)), a plaintiff must establish RICO standing by alleging facts sufficient to

12  show the requisite proximate cause relationship between his injury and the

13  predicate acts alleged in support of his RICO claim.  *Holmes v. Sec. Investor Prot.*

14  *Corp.*, 503 U.S 258, 268 (1992); *Walters v. McMahen*, 684 F.3d 435, 440, 443-45

15  (3d Cir. 2012).

16       Moreover, of the three (3) named Plaintiffs claiming to be victims of

17  repeated extortion, only a single instance of a purported "threat" to Plaintiff

18  Watson inducing him to contribute to the BA's Fund is identified.  (¶66-67).

19  According to their own allegations, this "extortion" and Watson's injury date back

20  to approximately 1999 and any resulting RICO claim is barred by RICO's four-year

21  statute of limitations.  *See Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996).

22          ***2.***      ***Plaintiffs' Continued Reliance on Collective Pleading***

23                  ***Requires Dismissal***

24       Moving Defendants must be properly put on notice of the basis of the claims

25  asserted against them, which is not accomplished by simply referring Defendants to

26  hundreds of paragraphs of narrative allegations.  *Twombly*, 550 U.S. at 555, 564-

27  65.  RICO requires a showing of two or more predicate acts *by each particular*

28  *defendant* that amount to a pattern of racketeering activity.  *Blake v. Dierdorff*, 856

F.2d 1365, 137-72 (9th Cir. 1988).  Plaintiffs asserting a RICO claim cannot
"merely lump multiple defendants together," but instead must "differentiate their
allegations when suing more than one defendant." *Swartz v. KPMG LLP*, 476 F.3d
756, 765 (9th Cir. 2007).

Here, Plaintiffs assert their 13th Claim against five (5) individual Moving
Defendants, and collectively allege liability stemming from Defendants "knowingly
and willfully [setting] into motion an over-arching scheme to use the LOCAL 12
RICO Enterprises to illegally obtain and extort monies from Plaintiffs and the BA's
Fund Class members." (¶634).  Plaintiffs are thus required to set forth the role of
each Defendant in the purported "over-arching scheme" and "inform each
defendant separately of the allegations surrounding his alleged participation in the
fraud." *Id.* at 765 (dismissal required where plaintiffs include specific factual
allegations as to only two defendants, as conclusory allegations that the other
defendants engaged in, knew of, or cooperated in the conduct are insufficient).

The deficiencies of Plaintiffs' RICO claim here are more egregious.
Plaintiffs first incorporate by reference more than 700 paragraphs and 200 pages of
allegations, noting with specificity only paragraphs 65-79 containing the BA's
Fund allegations (¶626), and then proceed to list the named Defendants along with
a perfunctory statement of a purported connection to the "scheme," unaccompanied
by any supporting facts (¶636(a)-(e)).  Nearly all of the remaining RICO allegations
refer to "Defendants" collectively, even as to elements of personal knowledge,
fraudulent intent, and willful or malicious acts.  (*See* ¶636-648).  *Blantz v. Cal.
Dep't of Corr. & Rehab.*, 727 F.3d 917, 926-27 (9th Cir. 2013) (unsupported
allegation that defendant directed others to act is insufficient).

**B.     Plaintiffs Fail to Adequately Allege Any Underlying Predicate
          Acts Sufficient to Support their RICO Claim**

"Racketeering activity" is limited to acts indictable under specified federal
and state laws.  18 U.S.C. § 1961(1).  Accordingly, only a showing of specific

violations of one or more of the enumerated provisions may qualify as "predicate acts" forming the basis of a RICO claim; generalized allegations of other purported wrongdoing–however pervasive–do not give rise to a claim under RICO.

Plaintiffs purport to base their RICO claims on the following racketeering activities: (1) Extortion in violation of the Hobbs Act, 18 U.S.C. § 1951 (¶636, 641); (2) Monetary transactions and money laundering in violation of 18 U.S.C. § 1957 (¶638-641); and (3) Embezzlement or conversion of assets of a labor organization–in violation of 29 U.S.C. § 501(c)–or of a related employee benefit plan–in violation of 18 U.S.C. § 664 (¶642-643).

To state cognizable claims for relief against any Moving Defendant, Plaintiffs must plead facts satisfying each element of the RICO violation, *and* set forth sufficient factual allegations to establish the elements of each purported illegal act Plaintiffs advance as an underlying "predicate act" in support of their RICO claims. *See Walters*, 684 F.3d at 439-40; *Savage v. Council on American-Islamic Relations, Inc.*, 2008 WL 2951281, at *14 (N.D. Cal. July 25, 2008) ("redundant narrative of allegations and conclusions of law" insufficient to show facts supporting each underlying predicate act in support of RICO). They must also expressly identify which acts are alleged as predicate acts against each Defendant. *See, e.g.*, *Izenberg v. ETS Servs, LLC*, 589 F. Supp. 2d 1193, 1203-04 (C.D. Cal. 2008) (incorporation of preceding allegations in the complaint insufficient RICO pleading). Plaintiffs have not done so.

### 1. *Hobbs Act Extortion*

Under the Hobbs Act, extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. §1951(b)(2); *Sekhar v. U.S.*, 133 S. Ct. 2720, 2723 (2013). The Supreme Court has held that "obtaining" property requires "not only the deprivation but also the acquisition of property." *Id.* at 2725 (citing *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 404

1   (2003)).  Absent a showing that "a defendant received 'something of value' from

2   the victim of the alleged extortion," the activities implicate the distinct and lesser

3   crime of coercion–"merely interfering with or depriving someone of property" or

4   "restrict[ing] another's freedom of action"–which cannot be a RICO predicate act.

5   *Scheidler*, 537 U.S. at 405-08; *U.S. v. McFall*, 558 F.3d 951, 956 (9th Cir. 2009).

6          Plaintiffs only factual allegations describe an assumed "threat of

7   termination" stemming from a single interaction between Plaintiff Watson and a

8   non-RICO-Defendant in approximately 1999.  (¶66-67).  Thus, given a most

9   generous reading, Plaintiffs rely on repeated "collection" of BA's Fund

10  contributions, through unspecified individuals over the course of an unspecified

11  number of years, arguing that each instance of a contribution of such money

12  constitutes an extortion offense by all of the Local 12 RICO Defendants.  (¶78,

13  636).  Plaintiffs are mistaken.

14         Plaintiffs' assertions of extortion by private individuals under the Hobbs Act

15  require Plaintiffs to show that each charged Defendant took some affirmative step

16  to utilize "wrongful use of actual or threatened force, violence or fear" to "induce"

17  the victim's consent.  *See Evans v. U.S.*, 504 U.S. 255, 264-65 (1992)(in contrast,

18  mere receipt of property may be sufficient for extortion by *public official* "under

19  color of official right").  Thus, even assuming Plaintiffs' vague allegations

20  adequately state facts showing that any Defendant "obtained" money from named

21  Plaintiffs (which they do not), the mere receipt of such property in the absence of

22  factual allegations plausibly showing that the Defendant actively induced the

23  purported victim's consent "by wrongful use of actual or threatened force,

24  violence, or fear" cannot constitute an independent extortion offense.  Wholly

25  unsupported generalities that "the threats" were "disseminated throughout Local 12

26  by Waggoner, the other Local 12 RICO Defendants, and others that they

27  designated" (¶635) are not entitled to weight or deference.  *Iqbal*, at 678-79.

28         Further, the Supreme Court has held that application of the Hobbs Act is

1   limited to "those instances where the obtaining of the property would itself be

2   'wrongful' because the alleged extortionist has no lawful claim to that property"

3   and "does not apply to the use of force to achieve legitimate labor ends." *U.S. v.*

4   *Enmons*, 410 U.S. 396, 400-01 (1973).  The few facts alleged do not suggest any

5   Plaintiff feared economic harm beyond an unsubstantiated fear of potentially being

6   "adversely affected" in the particular employment position he held at OETT or

7   Local 12, which even if genuine would not be "wrongful," "unwarranted,"

8   "unreasonable or unfair under the circumstances." *See, e.g., Heinrich v. Waiting*

9   *Angels Adoption Services, Inc.*, 668 F. 3d 393, 407-08 (6th Cir. 2012).

10                      *2.     Unlawful Monetary Transactions*

11          To establish a predicate act of money laundering or unlawful monetary

12   transactions under 18 U.S.C. § 1957, a plaintiff must show "(1) the defendant

13   knowingly engaged in a monetary transaction; (2) he knew the transaction involved

14   criminal property; (3) the property's value exceeded $10,000; and (4) the property

15   was derived from a specified unlawful activity." *U.S. v. Rogers*, 321 F.3d 1226,

16   1229 (9th Cir. 2003).  Plaintiffs claim that "Defendants" violated section 1957

17   when they "knowingly engaged in" or "attempted" or "caused to occur" monetary

18   transactions involving any monies constituting BA's Fund contributions.  (¶638-

19   641).  There are no factual allegations showing why alleged conduct, such as being

20   listed as a co-signatory on a bank account or having "authority to deposit" into a

21   bank account, constitutes a violation of § 1156 or 1957 and an illegal predicate act

22   under RICO.  (*See, e.g.*, ¶71, 75, 635-638, 640).  Nor do Plaintiffs state how any

23   banking transactions proximately caused a direct injury to a named Plaintiff.

24          Plaintiffs also fail to meet the threshold requirement of showing that each

25   alleged unlawful transaction involved more than $10,000.  A statement that each

26   transaction "in connection with the described schemes and artifices" was "of a

27   value, on information and belief, greater than $10,000" (¶641) is both insufficient

28   pleading and nonsensical given Plaintiffs' best estimates that a monthly banking

NOTICE OF MOTION AND MOTION DISMISS FOURTH AMENDED COMPLAINT

transaction would involve $50 from a total of approximately 65-68 people–or a maximum of approximately $3,400.  (*See* ¶71, 76).  Further, Plaintiffs draw no connection between the BA's Fund contributions and the particular bank account to which they refer, and state nothing but collective legal conclusions as to Defendants' knowledge and intent in carrying out purportedly fraudulent unlawful transactions.  Again, Plaintiffs' allegations are conclusory and utterly unsupported by the required factual enhancement.  *Iqbal*, 556 U.S. at 678.

Further, RICO claims involving fraud must comply with the heightened pleading requirements of Rule 9(b).  *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1088 (C.D. Cal. 2011).   The statutory violations alleged here require factual showings as to Defendants' individual knowledge and the existence of fraud.  18 U.S.C. §§ 1956, 1957.   Plaintiffs' only supporting allegations for these predicate acts, however, fall well short of the minimum requirement to state–with specificity–"the time, place, and manner of each predicate act, the nature of the scheme involved, and the role of each defendant in the scheme" needed to satisfy Rule 9(b).  *See Id.* at 1088-89 (citing *Lancaster Cmty. Hosp.*, 940 F.2d at 405).

### 3.   *Embezzlement from Local 12 or OETT*

Rather than a set of additional, distinct actions, the final category of "predicate acts" Plaintiffs allege in support of their RICO claim is merely a repackaging of the same set of actions that Plaintiffs first label as Hobbs Act extortion.  Although not explicitly stated, the apparent contention is that the same activities constitute predicate acts of embezzlement or conversion of funds in violation of 18 U.S.C. § 664 (regarding funds of an ERISA-covered employee benefit plan) and/or 29 U.S.C. § 501(c) (regarding funds of a labor organization).[3]

---

[3]  It is unclear whether Plaintiffs intend to plead alternative theories of relief or whether they contend that the acts referred to simultaneously constitute violation of the Hobbs Act *and* embezzlement of union funds.  In any case, the property at issue could not have been the rightful property of *both* the individual employee (as required for a Hobbs Act violation) *and* Local 12 or OETT (as

(¶642-643).  This theory is likewise untenable.

As an initial matter, Plaintiffs' alternative theory raises the same standing deficiencies discussed *supra*, as Plaintiffs do not allege a proximately caused injury stemming from these statutory violations sufficient to confer RICO standing. Further, Plaintiffs again ignore the "fraudulent intent" element that is critical to stating violations of both § 501(c) and § 664.  *United States v. Thordarson*, 646 F. 2d 1323, 1333-35 (9th Cir. 1981) ("[I]t is well established that proof of a specific criminal intent to deprive the union of its funds is required to make out a § 501(c) violation.").  Allegations that merely amount to legal conclusions are insufficient, as it is "essential to distinguish the mental element of § 501(c) from the forbidden acts–embezzlement, theft, and conversion." *United States v. Vandenbergen*, 969 F. 2d 338, 339 (7th Cir. 1992).  Plaintiffs' allegations fail to satisfy the minimum pleading requirements of Rule 9(b) applicable to claims involving fraud.

## C.    Plaintiffs' Conclusory Allegations Fail to Establish the Requisite "Pattern" and "Enterprise" Elements of RICO

The RICO claims require factual allegations showing that each Defendant engaged in a pattern of racketeering activity, including at least two (2) predicate acts *by each Defendant* in furtherance of the enterprise that are sufficiently related and suggest continuity.  18 U.S.C. § 1961(5); *HJ Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-40 (1989).  Plaintiffs' RICO allegations are patently insufficient to establish the requisite pattern of related predicate acts on behalf of each Moving Defendant.  Plaintiffs attempt to link together a laundry list of purportedly wrongful conduct–taking place over more than a decade–merely through perfunctory assertions that all acts were in furtherance of "the Local 12 RICO Defendants' desired ends in the course of the continuing business of the LOCAL 12 RICO Enterprises."  (*See* ¶644).

---

required for a embezzlement or conversion violation) at the same time.  Thus, Plaintiffs' theories are mutually exclusive.

RICO's "pattern" requirement ensures that the mere number of racketeering activities is not the determinative factor for liability, as the relationship between the activities alleged is critical.  A minimum of two predicate acts is necessary, but not necessarily sufficient; even a plaintiff who adequately alleges a multitude of racketeering activities must still establish the requisite relationship or common purpose among each discrete act.  *Id.* at 237-38.  Rather than allege facts demonstrating such a relationship, Plaintiffs resort to a bald assertion that all purported predicate acts are related to one another by common participants, victims, methods of commission, purpose, and result.  (¶644, 634).  Plaintiffs impermissibly rely on the same bare recitation of the statutory language to allege the elements of continued threat of unlawful activities and Defendants' "conduct of an enterprise through racketeering activity." (¶645-646). *Twombly*, at 555.

Plaintiffs have also taken a "kitchen sink" approach to defining the RICO enterprise under section 1961, claiming that the "enterprise" at issue includes some combination of Local 12 individually, "Local 12 and its associated funds, collectively," "[e]ach separate trust fund operated by OEFI," and/or all of the aforementioned entities collectively.  (¶629-631).  Plaintiffs then refer to the entire collection as the "LOCAL 12 RICO Enterprises" and make no further differentiation throughout their Claim.  (*See* ¶631 *et seq.*).  This shotgun pleading tactic is insufficient to state a claim under RICO, and merely highlights an additional, independent ground for dismissal.  Plaintiffs admittedly base their Claim at least in part on injuries to OETT and Local 12 (¶77, 642-643).  Yet, an entity cannot be both the "victim" and the "enterprise" in RICO claims brought under section 1962(c). *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 258-59 (1994).  The basis of Plaintiffs' RICO claim is further obscured by characterizations of the BA's Fund scheme as centered around employees' forced contributions "*to the Local 12 RICO Enterprises*" (¶635, 640), which cannot be reconciled with even Plaintiffs' vaguest descriptions of the "BA's Fund."

## II.     THE FIFTH CLAIM FAILS TO STATE A VIOLATION OF ERISA

Plaintiffs allege that the Trustees of the Pension Fund breached their fiduciary duty by having a dual purpose in approving many years of a thirteenth "extra pension check for retirees" at the end of each year.  Plaintiffs assert that this practice was not planned for in retirees' original contributions and was instead designed to secure retiree votes for Local 12 Business Manager WWaggoner at a time when the Pension Fund was in critical financial condition.  (¶32, 251, 252, 508, 509).  Plaintiffs contend that by paying extra pension benefits and incurring extra costs associated therewith, the Trustees breached their duty of loyalty to the participants and violated the prudent person standard of Section 404.  (¶254, 512).

### A.     Trustees Must Exercise Discretion in Performing their Duties of Providing Benefits

Pursuant to section 404 (29 U.S.C. § 1104), the Trustees, as fiduciaries of the Pension Trust, are obligated to act solely in the interest and for the exclusive purpose of providing benefits to participants.  Courts apply an "arbitrary and capricious" standard in reviewing a trustee's discretionary administration of a benefit plan.  "Thus, a court may intervene in the administration of an employee benefit plan, but should intervene only when the trustees transgress their fiduciary duties by acting in an arbitrary and capricious manner." *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984); *Mahoney v. Board of Trustees, Boston Shipping*, 973 F.2d 968, 971 (1st Cir. 1992) (trustees did not act arbitrarily or capriciously by significantly increasing the size of retirement pension and treating retirees less favorably than working members, as trustees had discretion to determine which participants received a greater pension benefit); *Toensing v. Brown*, 528 F.2d 69 (9th Cir. 1975) (applying same standard under LMRA, trustees' award of larger increase in benefits to active employees than to retirees neither "arbitrary and capricious" nor a breach of their duties).

Here, the Trustees are alleged to have had a longstanding practice of paying

1   retirees an extra check each year until 2011.  Notably, Plaintiffs do not and cannot

2   allege that the Trustees do not have the discretion to determine the amount of

3   pension benefits for retirees.  Rather, they allege, without any facts to support their

4   claim, that the Pension Fund is now in critical condition, that the Trustees should

5   not have authorized an annual thirteenth check, and that the payment of this check

6   benefitted Trustee and Local 12 Business Manager William Waggoner because

7   retirees "typically [have] the highest participation rate in union elections."  (¶508).

8   Payment of the annual extra check is within the sound discretion of the trustees.

9       **B.    As Payment of a "Thirteenth Check" Was for the Benefit of**

10          **Participants, Any Incidental Benefit to the Trustees is Not a**

11          **Violation of ERISA**

12      A trustee does not breach his fiduciary duty to act solely in the interests of

13   the participants simply because an action incidentally also benefits a third party.

14   *Morse,* 732 F.2d at 1146.  A union trustee has considerable discretion to decide the

15   balance between groups of beneficiaries even when the trustee benefits from the

16   decision as a member of the favored group.  *Mahoney,* 973 F.2d at 971.  The irony

17   in this case is that Plaintiffs allege that the Local 12 Trustees favored retired

18   members over active members by awarding them increased pension benefits, even

19   though the Trustees themselves are active rather than retired members.

20      Plaintiffs allege that the thirteenth check constitutes a benefit to WWaggoner

21   and his slate of officers because retirees tend to vote in union elections in a higher

22   proportion than active employees.  Even if this were true, and Plaintiffs have

23   offered no facts to support this conclusion, this circumstance cannot constitute a

24   breach of the union Trustees' fiduciary duty.  Every time that retirees receive an

25   increase in pension benefits, whether by a thirteenth check or otherwise, they will,

26   under the rationale of Plaintiffs, have an incentive to vote for the incumbent

27   officer-trustees of Local 12.  If increasing retirement benefits for retirees were a

28   violation of their fiduciary duty because it may have an incidental political benefit

1  to the union Trustees, the Trustees would never be able to increase pension benefits
2  without breaching their fiduciary duties.  Such a result would be a violation of
3  ERISA because the Trustees would not be acting in the sole interest and for the
4  exclusive benefit of the participants, and would be unable to exercise discretion
5  over the administration of the Plan.

6  **III.  THE EIGHTH AND NINTH CLAIMS FAIL TO STATE AN ERISA**
7  **CLAIM BASED ON DIVERSION OF OETT ASSETS VIA EPEC**

8  Plaintiffs allege that OETT monies were diverted from OETT to IUOE and
9  its political action fund (referred to as EPEC or the President's Club), by payroll
10 transactions handled by OEFI.  ¶576.  Plaintiffs allege that IUOE required local
11 union officers, and officers, management, and supervisory employees of the Trust
12 Funds to contribute one percent of their wages to the President's Club as a
13 condition of their employment (¶83), and that Paxin and Chamberlain were told or
14 made aware that if they wanted to be employed they had to make the contribution.
15 Plaintiffs allege that the contributions were "accomplished through compulsory
16 payroll deductions." (¶88).  They assert that new employees are presented with
17 payroll deduction forms and encouraged, and even compelled, to authorize the
18 deductions in order to keep their job.  (¶88-89).

19 The allegation that there was a transfer of OETT monies is contradicted by
20 the specific allegations that describe the mechanism by which OETT employees
21 contributed to EPEC.  Whether voluntary or not, Plaintiffs allege that the
22 contributions were wages deducted from employee paychecks, and thus could not
23 be assets of the Trust Fund.  OEFI and the Trustees, as fiduciaries of the OETT, are
24 obligated to act solely in the interest of and for the exclusive purpose of providing
25 benefits to participants.  29 U.S.C. § 1104.  The discharge of their duties only
26 applies to Fund assets, not the wages of employees.  Any contributions to EPEC
27 from the wages of Paxin, Chamberlain, or others do not implicate assets of OETT.
28 Thus, the 8th Claim fails to state facts upon which relief may be granted.

Because the 9th Claim seeks equitable relief based on the same alleged diversion of OETT assets to IUOE via the EPEC payroll practice, the Plaintiffs' 9th Claim likewise suffers from the same infirmities requiring dismissal.

## IV.    THE TENTH AND ELEVENTH CLAIMS FOR COMMON LAW BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED

In their 10th and 11th Claims, Plaintiffs again attempt to repurpose their allegations concerning EPEC contributions and BA's Fund contributions, now as the basis for common law fiduciary duty claims.  Neither claim is tenable.

Plaintiffs have again failed to plead facts sufficient to support their claims. The 10th Claim contains no plausible allegations that WWaggoner required Plaintiffs to make mandatory contributions to the President's Club.  Plaintiffs assert that a memo from WWaggoner compelled them to contribute because  "they knew that they had no choice but to do so in order to avoid adverse consequences to their employment" (¶91), but do not allege facts that WWaggoner or others ever threatened loss of their jobs.  Plaintiffs' speculation is just the type of bald allegation rejected in *Iqbal* and *Twombly*.  Similarly, the 11th Claim alleges that the union officers violated their common law fiduciary duty by requiring Local 12 employees to pay into the BA Fund.  Yet, as already shown *supra*, Plaintiffs' allegations are insufficient to raise a reasonable inference that the Moving Defendants engaged in the conduct alleged.  These basic defects and the additional claim-specific deficiencies addressed herein compel dismissal of both claims.

### A.    The Alleged Mandatory Contributions to EPEC and the BA's Fund Do Not Implicate a Breach of Fiduciary Duty

Plaintiffs allege that Salas, Chamberlain, and Paxin were required to make mandatory contributions as employees of either Local 12 or OETT.  (¶89-90). Contributions to the BA's Fund were also allegedly required of certain employees of Local 12 and OETT.  (¶65- 67, 70).  Plaintiffs do not and cannot allege that they were required to contribute to EPEC or the BA's Fund as a condition of their

*membership* in Local 12.

Courts have viewed the common law fiduciary duty of union officers as no more extensive than that required by federal law. *Service Employees Int'l Union, Local 250 v. Colcord*, 160 Cal. App. 4th 362, 368-369 (2008).  Under Section 501 of the LMRDA, the duty imposed upon a union officer is to hold and manage the assets of the union solely for the benefit of the union and its members. 29 U.S.C. § 501(a).  There is no California or federal authority that extends the duty imposed by Section 501 to employees rather than members of a union.  As a result, Moving Defendants here have no additional fiduciary duty to the Plaintiffs in their capacities as employees of OETT or Local 12.

Similarly, the trustees of OETT have a fiduciary duty as to the assets of OETT, not as to the wages of OETT employees.  Thus, Moving Defendants, as officers of Local 12 and Trustees of OETT, do not owe a separate fiduciary duty to Plaintiffs implicated by contributions to the BA's Fund.   Further, to the extent Plaintiffs' 11th Claim is based on allegations involving OETT, the Claim is preempted by ERISA.  *Paulsen v. CNF Inc*., 559 F.3d 1061, 1081 (9th Cir. 2009).

## B.   Federal Law Preempts the Tenth Claim

The Federal Election Campaign Act ("FECA") provides that the Federal Election Commission shall have exclusive jurisdiction to initiate a civil action to enforce FECA.  2 U.S.C. §§ 437c(b)(1), 437d(e); *Stockman v. Federal Election Com'n*, 138 F.3d 144, 147, n.1 (5th Cir. 1998).  A political action fund is prohibited from making a contribution from money secured by "dues, fees, or other moneys required as a condition of membership in a labor organization or as a condition of employment. . . ."  2 U.S.C. § 441b(b)(3)(A).

In the Third Amended Complaint, Plaintiffs previously admitted that the mandatory contributions violate the "Federal Election Campaign Act and Federal Election Commission rules."  (TAC ¶70).  The provisions of FECA "supersede and preempt any provision of State law with respect to election to Federal office."

1    2 U.S.C. § 453.  Thus, Plaintiffs may not circumvent FECA's enforcement

2    mechanism by filing an action based on state law.  Plaintiffs' exclusive remedy is

3    to file a complaint with the Federal Election Commission pursuant to its

4    administrative enforcement scheme.  *See* 2 U.S.C. § 437g; *Friends of Phil Gramm*

5    *v. Americans for Phil Gramm in '84*, 587 F.Supp 769, 773 (E.D. Va 1984).

6           **C.     A CBA Provision for a Five-Cent Political Contribution from**

7                    **Employers Does Not Show a Breach of Fiduciary Duty**

8           Plaintiffs allege that WWaggoner implemented an IUOE requirement that all

9    local union CBAs include a five-cent per hour check-off for political contributions.

10   (¶94, 96).  Thus, Plaintiffs assert, members working for signatory employers have

11   been forced to pay into the President's Club without their consent (¶97), and the

12   provision allowed money that otherwise could have been the wages of members to

13   go to EPEC instead.  But because any employer contribution was never the money

14   or property of Local 12, it cannot be the basis for a claim of breach of a fiduciary

15   duty.  29 U.S.C. § 501(a).  Despite a union officer's fiduciary duty, "courts do not

16   have the power to intervene in intra-union affairs at slight provocation or on any

17   invitation."  *Stelling v. Int'l Bhd. of Elec. Workers Local Union No. 1547*, 587 F.2d

18   1389, 1387 (9th Cir. 1978).  Here, Plaintiffs violate this admonition by asking the

19   Court to intervene in the collective bargaining priorities of Local 12.

20          This claim is, at best, an attempted claim for breach of the duty of fair

21   representation ("DFR") under a different name.  It is based upon Local 12's

22   handling of contract negotiations, and a union's DFR "applies to all union activity,

23   including contract negotiation."  *Air Line Pilots Ass'n Intern. v. O'Neill*, 499 U.S.

24   65, 67 (1991); *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1212 (9th Cir. 1980)

25   (federal preemption requires court to recharacterize state claim as one arising under

26   29 U.S.C. § 185).  Plaintiffs allege WWaggoner required that Local 12 CBAs

27   contain the "five cent requirement" approved by IUOE in 2008.  (¶94, 96).  Thus,

28   the claim is barred by the six-month statute of limitations applicable to claims

1   based on a union's DRF breach.  *DelCostello v. Teamsters*, 462 U.S. 151, 155

2   (1983).  Nor may Plaintiffs assert this claim against WWaggoner personally, as

3   union officials are immunized from such individual liability.  29 U.S.C. § 185(b);

4   *Williams v. Pacific Maritime Ass'n*, 421 F.2d 1287 (9th Cir. 1970).

5   **V.   PLAINTIFFS' CONVERSION CLAIM SHOULD BE DISMISSED**

6          In the 15th claim for relief, Plaintiffs allege that three (3) of the named

7   Plaintiffs–Salas, Chamberlain, and Watson–participated in the BA's Fund, through

8   which their property was "converted."  (¶673).  Plaintiffs assert the Claim against

9   "the Local 12 Officer Defendants," but fail to identify each Defendant in the

10  allegations that follow, instead relying on vague and conclusory statements that

11  refer to "Defendants" collectively.  ( ¶673-677).  Collective allegations that

12  "Defendants," for example, "issued direct or indirect threats" (¶673), "diverted . . .

13  monies to their own benefit (and/or the benefit of Waggoner)" (¶674), and "seized

14  and converted Plaintiffs' and BA's Fund Class members' tangible personal assets"

15  (¶676) do not satisfy minimum pleading standards to state a claim for conversion,

16  nor identify the facts giving rise to a conversion claim as to each individual

17  Defendant that Plaintiffs have charged.  *Iqbal*, 556 U.S. at 678, 680-81; *Blantz*, 727

18  F.3d at 926-27.  Again, Plaintiffs cannot avoid minimum pleading standards merely

19  by stating that their claim for conversion is supported "[a]s described herein,

20  including at Paragraphs 65-79 (incorporated herein by reference)" (¶673).

21          This strategy is especially improper where factual allegations <u>necessary</u> to

22  support a claim for conversion are directly contradicted in the General Allegations

23  and other claims for relief.  To state a claim for conversion under California law, a

24  plaintiff must show: (1) his rightful ownership or possession of the property at the

25  time of conversion; (2) that the defendant converted the property by wrongful act

26  or disposition of plaintiff's property rights (including showing that the plaintiff did

27  not consent to defendant's exercise of dominion over the property); and (3)

28  damages.  *Bank of NY v. Fremont General Corp.*, 523 F.3d 902, 914 (9th Cir.

2008).  Plaintiffs explain their claim is "based on the conversion of their wages"
and allege that "Defendants knew at all times that the improperly converted monies
of Plaintiffs and other BA's Fund Class members belonged exclusively to
Plaintiffs" (¶676), yet simultaneously incorporate allegations stating that the same
purportedly "converted" monies were actually the property of OETT or Local 12
(*see* ¶68, 77, 642-643).  Plaintiffs offer no explanation for this contradiction.

Presumably in an attempt to show that Defendants acted wrongfully and
without Plaintiffs' consent, Plaintiffs summarily state that "Defendants . . . issued
direct or indirect threats of economic injury to obtain [the] $50" per month for the
BA's Fund.  (¶673).  Yet, not even the General Allegations contain *any facts*
showing Plaintiffs having been threatened by any of the conversion-Defendants.
Further, Plaintiffs cannot state cognizable claims for both Hobbs Act extortion and
conversion under California law based on identical facts, as the former requires
showing the victim's consent to the taking, while the latter requires showing the
victim's *lack* of consent.  *See* 18 U.S.C. § 1951(b)(2); *Bank of NY*, 523 F.3d at 914
(citing *Farrington v. A. Teichert & Son*, 59 Cal. App. 2d 468 (1943)).

Money cannot be the subject of a conversion claim unless a "specific,
identifiable sum" is involved.  *Haigler v. Donnelly*, 18 Cal. 2d 674, 681 (1941).
Plaintiffs' summary statement that their claim is based on "tangible personal and
specifically ascertainable and identifiable monies" of Plaintiffs and BA's Fund
Class members (¶675) is insufficient.  Plaintiffs are unable to identify the sum
certain of specific "converted"  money even as to the named Plaintiffs, let alone as
to the unknown members of a BA's Fund Class.[4]  The general assertion that such
employees were "expected" to contribute $50 per month does not satisfy the
requirement that Plaintiffs identify the "specific, identifiable sum" on which their

---

[4]  Even Plaintiffs acknowledge this uncertainty: "At present, there are
roughly 65-68 employees paying $50 each into the BA's/Re-Election Fund on a
monthly basis, though the exact number has varied over time."  (¶72, 76).

NOTICE OF MOTION AND MOTION DISMISS FOURTH AMENDED COMPLAINT

1   conversion claim is based.  *See Trustees of So. Cal. Pipe Trades Health & Welfare*
2   *Trust Fund v. Temecula Mechanical, Inc.*, 438 F. Supp. 2d 1156, 1171-72 (C.D.
3   Cal. 2006) (failure to identify the specific amount of money converted by defendant
4   in failing to remit employees' union dues renders claim defective, requiring
5   dismissal).  Plaintiffs do not tether their general statements to any facts stating the
6   number of contributions actually made prior to retirement and within the three-year
7   statute of limitations period applicable to claims for conversion (*see* Code Civ.
8   Proc. § 338), nor make any attempt to differentiate between Defendants and
9   identify the specific funds each purportedly converted from a Plaintiff.  Plaintiffs
10  merely allege a "generalized claim for money not actionable as conversion." *Vu v.*
11  *Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 235 (1997).

12  **VI.   PLAINTIFFS' UCL CLAIMS SHOULD BE DISMISSED**

13          Finally, Plaintiffs assert three (3) separate claims for relief under California's
14  Unfair Competition Law ("UCL," codified at Business & Professions Code section
15  17200, *et seq*.), which prohibits "'any unlawful, unfair or fraudulent business act or
16  practice.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)
17  (quoting Cal. Bus. & Prof. Code §17200).  Plaintiffs do not state a UCL claim
18  against Moving Defendants for several reasons.

19          To have standing to bring a UCL claim, each named Plaintiff must show that
20  he *personally* "has suffered injury in fact and has lost money or property as a result
21  of such unfair competition."  Bus. & Prof. Code § 17204.  Further, Plaintiffs do not
22  have standing to sue multiple Defendants for UCL violations unless the Plaintiff
23  had direct dealings with each named Defendant.  *See Schulz v. Neovi Data Corp.*,
24  152 Cal. App. 4th 86, 92, 97 (2007).

25          Moving Defendants have already demonstrated that Plaintiffs' conclusory
26  allegations regarding the BA's Fund are insufficient to raise a plausible inference
27  that the named Plaintiffs suffered the required direct property injury, nor that the
28  Moving Defendants engaged in the misconduct first alleged to support Plaintiffs'

attempted RICO claim, and now recycled as the basis for a UCL claim.  (*See* ¶694, 697, 701, 703).  Because these allegations fail to satisfy the plausibility standard of *Iqbal* and *Twombly*, they are insufficient to state a claim for relief under the UCL.

Plaintiffs' 18th Claim, the final catch-all UCL claim, purportedly encompasses the "wrongful acts and practices unrelated to the wrongs described above regarding employee trust funds." (¶709).  However, to the extent the basis of the claim is specified at all, Plaintiffs continue to rely on previously-alleged "acts and/or practices" that are directly related to the trust funds (*e.g.*, ¶715 [theft of recycled metals; appropriation of labor; restoration of boats or automobiles]), and to that extent the claim is preempted by ERISA.  *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *Paulsen,* 559 F. 3d at 1081.  Further, Plaintiffs fail to state any injury in fact to their own money or property which would give them standing to bring this additional claim against the Moving Defendants, as the remaining basis for the Claim seems to concern alleged mismanagement of Local 12 assets.  *See generally, In re Tobacco II Cases*, 46 Cal. 4th 298 (2009); *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 92, 97 (2007).

Plaintiffs' UCL claims are inadequately pled for additional reasons.  "To allege a UCL claim, a plaintiff must show that the defendant's business practice was unlawful, unfair, or fraudulent by stating with reasonable particularity the facts supporting the violations." *Casault v. Fed. Nat. Mortgage Ass'n*, 915 F.Supp.2d 1113, 1128 (C.D. Cal. 2012).  But Plaintiffs' claims under the unlawful prong of the UCL are simply lists of federal and state laws purportedly violated by unidentified Defendants, without any indication of which Defendants are alleged to have violated which laws.  (*See* ¶700-701, 715).  Plaintiffs' claims under the unfair prong, in turn, are no more than recitation of the elements of an "unfair" UCL claim. (¶703, 716-717).  In cases alleging UCL violations through omissions or for "unfair" conduct, Plaintiffs are required to plead with particularity, as with fraud cases governed by Rule 9(b).  *Kearns*, 567 F. 3d. at 1125, 1127.

1       Plaintiffs attempt to avoid the requirement of putting each Defendant on

2  notice of the basis of the claims asserted against them by instead collectively

3  pleading "aiding and abetting liability," asserting that, "[t]o the extent that certain

4  of the Local 12 Officer Defendants were not the primary violators of the UCL with

5  respect to particular acts and practices . . . they aided and abetted their co-

6  defendants . . ." (¶707, 721).  However, the UCL claims against each Defendant

7  still require actual participation, and thus even an aiding and abetting theory of

8  liability "must be predicated on his actual participation in the unlawful practices."

9  *People v. Toomey*, 157 Cal. App. 3d 1, 14 (1984)*; Emery v. Visa Int'l Service*

10  *Ass'n*, 95 Cal. App. 4th 952, 960, 962 (2002) ("Knowledge of, or failure to prevent,

11  a crime is not sufficient to establish aiding and abetting liability").  Where, as here,

12  Plaintiffs "do not state particular facts to support their claim except to re-allege and

13  incorporate every allegation in the [lengthy] pleading," the claim should be

14  dismissed.  *Casault*, 915 F.Supp.2d at 1129.

## CONCLUSION

16       Based on the foregoing, Defendants respectfully request that the Court

17  dismiss Plaintiffs' claims against the Moving Defendants in their entirety and with

18  prejudice.

20  **DATED:**  March 25, 2013                    **POSNER & ROSEN LLP**

22                      By:___*Howard Z. Rosen*_____

23                         HOWARD Z. ROSEN
                       JASON C. MARSILI

24                         BRIANNA M. PRIMOZIC
                       Attorneys for Defendants

25                         William C. Waggoner, Mickey J. Adams,
                       Ron Sikorski, Dan Billy, Dan Hawn, Larry

26                         Davison, Patricia M. Waggoner, Kenneth
                       D. Waggoner, Bert Tolbert, and OEFI.